# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No.: 2:09-cr-1339-PMD |
| v. ) | |
| ) | **ORDER** |
| HAROLD LEE SMALLS, JR., ) | |
| ) | |
| Defendant, ) | |
| _____) | |

      This matter is before the Court upon Defendant Harold Lee Smalls, Jr.'s ("Defendant") Motion to Suppress ("Motion") drugs, a firearm, a scale, and cash seized by the City of Charleston Police Department. A hearing was held on this Motion on July 19, 2011, and again on January 22, 2013. For the reasons set forth below, the Court denies Defendant's Motion.

## FACTUAL BACKGROUND

      On or about September 17, 2009, four "Team One Power Shift" City of Charleston officers were patrolling in response to complaints of unlawful activity in the area. Officers Light and Burke were in a car following Defendant's car, and Officers Bailey and Keener were in a separate car. The officers communicated back and forth between cars by radio using a different channel than the main channel used by dispatchers. Officer Light saw Defendant turn left off of Meeting Street and onto Mt. Pleasant Street without activating his turn signal at least 100 feet before the turn. Defendant made this turn from a delineated left turn lane at an intersection with an arrow for left turns. Officer Light then radioed Officer Bailey to ask him to run the license plate tags. Within seconds, Officer Bailey responded that the license plate was suspended. Officer Bailey then turned on the blue lights of his car and initiated the traffic stop. There was no audio or video equipment on any of the cars that evening.

1

Officer Bailey approached the driver's door and asked Defendant for his license and registration.[1] While approaching the vehicle on the passenger's side, at least one officer was able to identify a digital scale protruding from the rear pocket of the passenger seat. At least one officer also smelled an odor of marijuana coming from the vehicle. Based on the scale and the odor of marijuana, the officers asked Defendant to exit the vehicle. When he refused, they removed him from the vehicle. After Defendant was outside, the officers asked him if he was armed. He refused to answer the question. Fearing for their safety, the officers placed Defendant in handcuffs. Once in handcuffs, Defendant admitted to previously smoking marijuana with friends. He then invited the officers to search the vehicle. The officers retrieved the scale and noticed residue on it.

When Officer Light asked if he could search Defendant's person, Defendant consented. In Defendant's pants pocket, Officer Light recovered a metal Altoids tin that contained a substance resembling cocaine base.[2] While Officer Light field tested the substance, Defendant admitted, without being asked, that the "crack" was his. The substance tested positive for cocaine base, and the officers then placed Defendant under arrest. Following the arrest, a more thorough search was conducted, and 15.56 grams of cocaine base and 1.26 grams of marijuana were found in his shirt pocket. Next, the officers conducted an inventory search of the vehicle. During that search, the officers found cash and a loaded Hi-Point .380 caliber handgun in the center console.

**PROCEDURAL BACKGROUND**

On December 28, 2009, Defendant was charged in a three-count indictment with: (1) possession of a firearm and ammunition by a convicted felon; (2) possession with intent to

---

[1] The car was not registered in Defendant's name, but instead belonged to someone else.
[2] This substance was later identified to be 1.21 grams of cocaine base.

2

distribute five grams or more of cocaine base; and (3) possession of a firearm in furtherance of a drug trafficking crime. These charges arose from Defendant's arrest on September 17, 2009, following the traffic stop.

On April 27, 2010, Defendant filed a Motion to Suppress, in which he argues that the seizure and search of the automobile and of his person were in violation of the Fourth Amendment because (1) the police officers lacked reasonable suspicion and/or probable cause to stop the vehicle; (2) there was no evidence in plain view at the time of the stop; and (3) the Defendant did not consent to the search of the automobile or his person. Accordingly, Defendant requests that the Court suppress the following evidence seized during the searches: (1) 15.56 grams of cocaine base; (2) 1.21 grams of cocaine base; (3) 1.26 grams of marijuana; (4) Hi Point .380 caliber handgun and ammunition; (5) $289.00; and (6) a metal scale.

An initial hearing on the Motion was held on July 19, 2011. The Court limited the scope of the hearing to Officer Light's testimony regarding the officers' decision to initiate the traffic stop. At the conclusion of the hearing, the Court denied Defendant's Motion. Defendant then entered a conditional guilty plea on August 30, 2011, thereby preserving his right to appeal the order denying his Motion. He pled guilty to Counts 1 and 2 of the indictment and was sentenced on January 11, 2012.

Defendant filed an appeal with the Fourth Circuit and argued, among other things, that the district court erred when it limited testimony and evidence presented at the suppression hearing regarding matters of factual dispute. Instead of filing a response brief, the Government filed a Consent Motion for Remand, agreeing with Defendant that the case should be remanded for further testimony to establish the bases for the officers' searches of Defendant and the vehicle. The Government requested that the district court's judgment be vacated and that the

case be remanded for the purpose of receiving additional testimony regarding Defendant's Motion to Suppress. In an Order dated July 30, 2012, the Fourth Circuit granted the Government's motion, vacating the judgment of conviction and remanding the case for further proceedings, including an additional hearing on Defendant's motion to suppress.

The rehearing on the Motion was held on January 22, 2013. At the beginning of the rehearing, the parties agreed that the transcript from the initial hearing would be incorporated into the record of the rehearing so that Officer Light's testimony from the 2011 hearing would be included in the record of the 2013 hearing.

## ANALYSIS

### I. The initial traffic stop was lawful

Defendant's primary argument is that the traffic stop was made without probable cause and/or reasonable suspicion. A court's determination of whether reasonable suspicion justified a stop or prolonged detention should be based on the totality of the circumstances, without giving undue attention to individual factors. *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002). When officers observe a traffic violation, they are justified in detaining the offending vehicle. *Whren v. United States*, 517 U.S. 806, 810 (1996).

According to the Government, the officers observed two violations that justified stopping Defendant. First, Defendant turned off of Meeting Street and onto Mt. Pleasant Street without first activating a turn signal in violation of state law. *See* S.C. Code Ann. § 56-5-2150(b) ("A signal of intention to turn or move right or left when required shall be given continuously during not less than at least one hundred feet traveled by the vehicle before turning"). Second, the car's license plate was suspended in violation of state law. *See* S.C. Code Ann. § 56-3-110 (requiring that all vehicles be registered and licensed).

4

Defendant contends that he was not required to activate his turn signal 100 feet before the turn because he was in a left-only turn lane. According to Defendant, under the plain meaning of the S.C. traffic code, failure to use a turn signal when turning from a designated left turn lane is not a violation of the law. However, Defendant has not produced—and the Court has not found—any case law to support his reading of the statute.

However, even if the Court assumes *arguendo* that Defendant's turn was permissible, the officers still had probable cause for the traffic stop because they knew before they initiated the stop that the license plate was suspended. In arguing that the officers did not know that the tag was suspended until after the stop had occurred, Defendant relies on the fact that the police report states that the traffic stop was initiated at 11:15, while the dispatch record shows that the tags were not run until 11:20. However, Officer Light testified that he wrote the incident report hours later at the police station and that he must have made a mistake in estimating the time that the traffic stop began. He also testified that he made a typo when he failed to write "approximately 23:15" for the time the traffic stop was initiated. Furthermore, Officer Bailey testified that he turned on his blue lights and initiated the stop after he received the report that the license tags were suspended. Officers Light and Burke's testimony corroborated this sequence of events. Because the Court finds the officers' testimony credible based on the totality of the circumstances, the Court concludes that the traffic stop was lawful.

## II. The searches of the vehicle and of Defendant's person were constitutional

### A. Defendant gave knowing and voluntary consent to the searches

A search conducted after a subject has given consent is constitutionally permitted. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The suspect does not need to be informed of his right to refuse consent, and the search is permissible so long as the consent is given

5

knowingly and voluntarily.  *United States v. Boone*, 245 F.3d 352, 362 (4th Cir. 2001).  Even if the suspect is in handcuffs he may voluntarily consent to a search.  *See United States v. Strickland*, 245 F.3d 368, 383 (4th Cir. 2001).

The Government must prove by a preponderance of the evidence that consent was knowing and voluntary.  *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007).  In determining whether Defendant's consent to search was freely and voluntarily given, this Court must examine the totality of the circumstances.  *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (en banc).  "[I]t is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)."  *Id.*

The officers testified that Defendant gave consent to search the vehicle he was driving and his person.  Specifically, when asked about the smell of marijuana coming from the vehicle, Defendant, without being asked, invited the officers to search the vehicle.  During this search, the officers retrieved the scale.  Then the officers asked Defendant for permission to search his person, and, according to the officers, Defendant granted permission.  During this pat-down search, the officer recovered 1.21 grams of cocaine base.  Defendant did not present any evidence to contradict the officers' testimony regarding his consent.  Based on a totality of the circumstances, the Court concludes that Defendant's consent to the searches was knowing and voluntary.  Thus, the evidence recovered from those searches is admissible.

### B. <u>Even if Defendant did not give consent, the pat-down search was constitutional</u>

However, even if the Court were to conclude that Defendant did not give knowing and voluntary consent to the searches, the Court would still find the pat-down search constitutional.

"[O]nce a vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). Therefore, officers were able to ask Defendant, as the driver of a detained vehicle, to get out of the vehicle during the completion of the stop without violating the Fourth Amendment.

Not only can a police officer order a driver out of a vehicle, but an officer may frisk a suspect if he or she justifiably believes that the person may be armed and presently dangerous. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The Fourth Circuit has held that "in connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others." *United States v. Sakyi*, 160 F.3d 164, 169 (1998).

In this case, the officers' testimony establishes that they had a reasonable suspicion that illegal drugs were in the vehicle. After stopping Defendant for traffic violations, the officers noticed the smell of marijuana and saw a scale in the vehicle. The officers testified that they knew, from their experience in narcotics enforcement, that such scales were often used in the drug trade. Furthermore, when the officers asked Defendant if he were armed, he did not respond. Given the officers' experience and the surrounding circumstances, the officers were justified in conducting a pat-down search for weapons.

If the pat-down search provides an officer with probable cause for believing that an object felt in the clothing is criminal evidence subject to seizure, he may pull out the object without a warrant, pursuant to the plain feel doctrine. *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). The question becomes whether or not the incriminating nature of the 1.21 grams

of cocaine base was immediately apparent. *United States v. Raymond*, 152 F.3d 309, 313 (4th Cir. 1998). The "plain feel" doctrine holds that contraband discovered during a lawful *Terry* stop is admissible so long as the search does not exceed the bounds permitted by *Terry*. *Dickerson*, 508 U.S. at 373. Thus, if the contour or mass of the object makes its criminal identity immediately apparent, the officer may lawfully seize it. *Id*. at 375.

Officer Light, the officer who conducted the pat-down search, testified that the search lasted no more than a few seconds. Additionally, he testified that he recognized the small metal can that held the crack cocaine as being a type of container frequently used to store narcotics. Based upon this testimony, the Court concludes that Defendant's Fourth Amendment rights were not violated during the initial pat-down search. *See Raymond*, 152 F.3d at 313 (finding a pat-down search reasonable when the officer testified that he realized the hard object in the defendant's pocket was not a gun, but immediately concluded it was crack cocaine, and when the search took approximately five seconds). Accordingly, the cocaine base found in Defendant's pants pocket is admissible.

### C. The search of Defendant's person was a lawful search incident to arrest

After the officers recovered the 1.21 grams of cocaine base from Defendant's pants pocket, he was placed under lawful arrest for possession of this cocaine base. Once under arrest, officers searched his person more carefully and recovered 15.56 grams of cocaine base and 1.26 grams of marijuana in Defendant's shirt pocket. Searches of suspects under arrest are simply "an incidental administrative step following arrest." *Illinois v. Lafayette*, 462 U.S. 640, 644 (1983). Searches incident to arrest are constitutional. *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979). In this case, having found cocaine base in Defendant's pants pocket during a pat-down search,

8

the arrest was proper and thus the additional search of his person incident to that arrest was proper as well. Therefore, the drugs found in his shirt pocket are admissible.

**D.  The inventory search of Defendant's vehicle was permissible**

After Defendant was placed under arrest, his vehicle was searched by law enforcement. The Fourth Circuit has held that "[i]f the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to the standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner." *United States v. Murphy*, 552 F.3d 405, 412 (4th Cir. 2009) (quotation and citation omitted). Evidence recovered during an appropriate inventory is admissible against a defendant and should not be suppressed. *See United States v. Battle*, 370 F. App'x 426, 429 (4th Cir. 2010) (citing *South Dakota v. Opperman*, 428 U.S. 364, 373-75 (1976)).

In this case, Officer Light testified that the search of the vehicle was done as part of standard police procedure before a vehicle is towed. He further testified that the vehicle had to be towed because the license tags were suspended. Because the vehicle was in police custody and the inventory search was done in accordance with normal procedure, the scale, the gun, and the cash that were found in the vehicle are admissible.

Furthermore, to the extent that the scale was seized during the initial pre-arrest search of the vehicle—and assuming *arguendo* that Defendant did not consent to that search—the scale is subject to the inevitable discovery doctrine. Under this doctrine, improperly seized evidence may nevertheless be admitted if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful

9

means." *Nix v. Williams*, 467 U.S. 431, 444 (1984).  The scale was in plain view and would have been seized during the inventory search.  Thus, the scale is admissible.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Defendant's Motion to Suppress is **DENIED**.

AND IT IS SO ORDERED.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**January 24, 2013**
**Charleston, SC**